# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

OTIS SPENCER,          )
                                  )

        **Petitioner,**       )
                                  )

    **vs.**                 )     **Case No. 4:04CV401ERW/MLM**
                                  )

**JIM MOORE,**           )
                                  )

        **Respondent.**     )

# REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner Otis Spencer ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent Jim Moore filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 9. Petitioner filed a Traverse. Doc. 12. Petitioner is currently incarcerated at the Northeast Correctional Center. Therefore, Jim Moore ("Respondent"), as the superintendent of that institution, is the proper party Respondent. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Doc. 6.

# I.
# BACKGROUND

Petitioner was charged by Amended Information, dated September 6, 2000, as follows: Count I, forcible rape in violation of Mo. Rev. Stat. § 566.030, in that on or about April 19, 1998, in St. Charles County, Missouri, Petitioner knowingly had sexual intercourse with K.D. by the use of forcible compulsion, and Count II, attempted forcible rape in violation of Mo. Rev. Stat. § § 564.011, 566.030, in that on or about June 26, 1998, in St. Charles County, Missouri, Petitioner

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

attempted to have sexual intercourse with [T.M.][1] by the use of forcible compulsion, by grabbing her,

throwing her to the ground, choking her, requesting sex for drugs, and holding an object to her throat

and grabbing her genitals, which conduct was a substantial step toward the commission of the crime

of attempted forcible rape and was done for the purpose of committing such forcible rape. Resp. Ex.

B at 16-18. Petitioner was charged as a prior pursuant and persistent offender. Resp. Ex. B at 17.

The Missouri appellate court summarized the testimony at Petitioner's trial as follows:[2]

> About 10:30 p.m. on April 18, 1998, K.D. walked to the Set'Um Up Saloon
> in Wentzville. She stayed for about two hours and then undertook to walk home.
> The defendant accosted her and she gave him a cigarette. He told her that he had
> some "good shit," and she reprimanded him for making such a statement to a stranger,
> suggesting that so far as he knew she might be an undercover officer. The jury could
> determine that he was talking about illegal drugs. After some preliminaries he
> grabbed the victim, threw her to the ground, and began choking her. She protested
> and tried to resist. He removed her jeans and grabbed her underwear. She tried to
> scratch him but he continued his efforts and raped her, achieving penetration sufficient

---

[1]    The court notes that there is a typographical error in the Amended Information in regard to the initials of this alleged victim. As Petitioner was not found guilty at trial of Count II the court need not address this error.

[2]    In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir.2003)), cert. denied, 541 U.S. 996 (2004). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain,464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 866 (8th Cir. 1998) (citing  28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2);  Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also  Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

to establish an essential element of the offense of rape. He fled when a male stranger who witnessed the incident appeared.

On June 25, 1998, T.M. went to the Set'Um Up Saloon to meet girl friends, who did not appear. After about 15 or 20 minutes she left the premises. She heard her boyfriend's vehicle and hid from him, not wanting him to know that the girls had "stood her up." She had walked about 30 feet when the defendant accosted her from behind. She had met the defendant about a month earlier, and told him that she knew who he was. He offered her drugs for sex, which proposition she rejected. He then threw her to the ground, tried to choke her, displayed what she thought was a knife, and grabbed her between the legs, but before he could proceed further she freed herself and ran to the nearest house.

State v. Spencer, 62 S.W.3d 623, 624-25 (Mo. Ct. App. 2001).

A jury found Petitioner guilty of Count I, forcible rape and found him not guilty of Count II, attempted forcible rape. Resp. Ex. B at 50. The court sentenced Petitioner to twenty-five years in the custody of the Missouri Department of Corrections. Resp. Ex. B at 65.

On October 11, 2001, Petitioner filed a direct appeal. Resp. Ex. C. On December 4, 2001, the Missouri appellate court affirmed the judgment against Petitioner. Spencer, 62 S.W.3d at 623. On February 27, 2002, Petitioner filed a pro se post-conviction relief motion. Resp. Ex. F at 1. Counsel was appointed and an amended post-conviction relief motion was filed pursuant to Rule 29.15. Resp. Ex. F at 9-15. On August 26, 2002, the motion court denied Petitioner's post-conviction relief motion. Resp. Ex. F at 19-22. Petitioner appealed the decision of the motion court to the Missouri appellate court. Resp. Ex. G. On May 20, 2003, the Missouri appellate court affirmed the judgment against Petitioner. Resp. Ex. I.

On April 5, 2004, Petitioner filed his § 2254 Petition in which he raises the following issues:

1.    The trial court erred in denying Petitioner's motion to sever Counts I and II;

2.    The trial court erred in denying Petitioner's motion to suppress evidence regarding blood seized from Petitioner;

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**3**.    The trial court erred in admitting State's Exhibit No. 21, a rape kit, because there was no foundation or a chain of custody established regarding the integrity of the evidence;

**4**.    The trial court erred in allowing the jury to hear the audiotape the victim made the night after her attack; and

**5**.    The trial court erred in imposing a longer sentence than recommended by the State prior to trial.

Doc. 1 at a-l.

## II.
## LEGAL FRAMEWORK APPLICABLE TO DEFAULT, EXHAUSTION AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)).

A state prisoner who fails to follow applicable state procedural rules for raising claims "is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). See also Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1997) ("[B]efore a petitioner can bring a federal habeas action, he must have presented the same legal theories and factual bases to the state courts." (citing Anderson v. Harless, 459 U.S. 4, 6 (1982); Kenley v. Armontrout, 937 F.2d 1298, 1301 (8th Cir.)). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Abdullah, 75 F.3d at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice").

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are 'no currently available, non-futile state remedies,' through which the petitioner can present his claim." Id. (citation omitted).

However, "only a 'firmly established and regularly followed state practice' will bar federal court review." Clark v. Caspari, 274 F.3d 507, 510 (8th Cir. 2001) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). In Randolph v. Kemna, 276 F.3d 401, 404 (8th Cir. 2002), the Eighth Circuit held that the law of Missouri does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court." The Eighth Circuit concluded, in Randolph, that a state prisoner, seeking federal habeas review, need not seek transfer to the Missouri Supreme

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Court.  Id. at 404-405.

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.  Petitioner filed his § 2254 Petition within the 1-year limitation period of § 2244(d)(1). Petitioner raised before the Missouri appellate court the issues which he raises in his § 2254 Petition. The court finds, therefore, that Petitioner has exhausted his State remedies, that he has not procedurally defaulted any of the issues which he raises before this court, and that his Petition is timely filed.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996.  Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).

In Williams v. Taylor, 529 U.S. 363 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254.  The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application with respect to claims adjudicated on the merits in the state court." Id. at 412.  The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. 412-13.

<u>Williams</u> further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. <u>See</u> <u>id.</u> at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" <u>Copeland</u> <u>v. Washington</u>, 232 F.3d 969, 973 (8th Cir. 2000) (quoting <u>Williams</u>, 529 U.S. at 411). <u>See</u> <u>also</u> <u>Siers v. Weber</u>, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in <u>Williams</u> that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. <u>See</u> <u>also</u> <u>Price v. Vincent</u>, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case. <u>Williams</u>, 529 U.S. at 413. <u>See</u> <u>also</u> <u>Perry v. Johnson</u>, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in <u>Perry</u> that "even if the federal habeas court

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**."** Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003), cert. denied, 540 U.S. 1059 (2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of th evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); Boyd v. Minnesota, 274 F.3d 497, 501 n. 4 (8th Cir.2001)."), cert. denied, 125 S.Ct. 670 (Dec. 6, 2004).

8

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. <u>Wright v. West</u>, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004)**.**

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. <u>Brown v. Leubbers</u>, 371 F.3d 458 (8th Cir. 2004), <u>cert. denied</u>, 123 S.Ct.1397 (Feb. 28, 2005). The court held in <u>Brown</u> that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. <u>Coleman v. Thompson</u>, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that it "is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits." Id. at 462.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA because there is no apparent state-court adjudication to which this standard can be applied. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**IV.**

**DISCUSSION**

**Ground 1 -The trial court erred in denying Petitioner's motion to sever Counts I and II:**

In support of Ground 1 Petitioner argues that Counts I and II were not similar in character; that they were not based on the same act or transaction; and that they did not constitute parts of a common scheme or plan; and that, therefore, joinder was not authorized by Missouri law. Petitioner further argues that there was an allegation in Count II that Petitioner knew the victim prior to the incident and that there was no such allegation in Count I. He also contends that in regard to Count I there was evidence that the victim fled while in Count II there was no such evidence. Petitioner further contends that the failure to sever rendered his trial fundamentally unfair and that he was prejudiced because evidence which was heard by the jury in regard to Count II was inadmissible. Doc. 12 at 2-4.

Upon addressing the issue of Petitioner's Ground 1 the Missouri appellate court held as follows:

> The defendant argues that the offenses are not of the same or similar character, and so were erroneously joined in the same information. He complains, alternatively, that even if the offenses are legally joined their trial together prejudiced him to such an extent that the court erred in overruling his motion to sever.
>
> The courts have evolved a two part test in determining questions of joinder of offenses. See State v. Kelly, 956 S.W.2d 922, 925 (Mo. App.1997); State v. Pasteur, 9 S.W.3d 689, 694-5 (Mo. App.1999). It must first be determined whether the joinder complies with the governing statutes and rules. If the answer to this question is negative, prejudice is presumed and any conviction must be reversed.
>
> If the joinder is in compliance with the legal requirements, the court must still determine whether there is such indication of prejudice from cross-contamination of evidence that severance must be granted. As to severance, under these conditions the trial court is afforded broad discretion.

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

We conclude that the joinder of these two offenses in one indictment does not violate the statute and rule cited above. The use of similar tactics is sufficient to show that the offenses are of the same or similar character. Pasteur, 9 S.W.3d at 694; State v. Hemme, 969 S.W.2d 865, 869 (Mo. App.1998). In this case both of the victims were adult women who had just left the same barroom and were walking alone. The defendant discussed drug use with both of them and then turned to violence, wrestling and choking the victims before removing clothing and ravishing them. The principal difference was that in the earlier indictment the defendant achieved penetration while in the latter one the victim escaped his clutches.

Recent cases regularly say that, in order to be joined, the manner in which the crimes were committed should be so similar that it is likely that the same person committed all the charged offenses. Pasteur, 9 S.W.3d at 694; Hemme, 969 S.W.2d at 869; State v. Hyman, 37 S.W.3d 384, 393 (Mo. App.2001). There is merit in the state's assertion that this proposition is an overstatement, because the cases go on to assert that "the use of similar or comparable tactics sufficiently establishes that the offenses are of a similar character for the purpose of joinder," which seems to indicate a more permissive standard. Hyman, 37 S.W.3d at 393. We conclude that, in any event, the joinder in this case is consistent with the holdings in the cases just cited.

Having determined that the joinder of the two counts was not legally erroneous, we proceed to the question of whether the trial court abused its discretion in overruling the motion to sever. The jury was properly instructed that it must consider each offense separately. The circumstance that the jury acquitted the defendant on one count probably does not suffice to demonstrate that the joinder was lawful, but is appropriate to consider in determining whether the court abused its discretion in denying the requested severance. We do not sense an abuse of discretion in denying severance.

The defendant cites State v. Simmons, 815 S.W.2d 426 (Mo. banc 1991), in which the Supreme Court reversed convictions and death sentences in two somewhat similar, but unrelated, murder charges after finding that they were improperly joined. The state's brief does not favor us with a discussion of this case, but it is distinguishable because homicide cases were then governed by Section 565.004.1 RSMo (1986), providing in pertinent part as follows:

A count charging any offense of homicide may only be charged and tried together with one or more counts of any other homicide when all such offenses ....constitute part of a common scheme or plan.

The authority to join homicide offenses "of same or similar character," then, did not exist at the time of Simmons's trial and the Simmons case is not on point here.

Improper joinder was found in <u>State v. Kelly</u>, 956 S.W.2d 922 (Mo.App.1997), in which four separate charges of armed robbery were joined. The court found that the offenses were unrelated in time and did not involve similar tactics. The report of that case demonstrates substantial differences between it and the other cases cited above, as to the number of offenses and the distinct dissimilarities. The cases we rely on are much closer to this case than is <u>Kelly</u>.[3]

<u>Spencer</u>, 62 S.W.2d at 625-26

Pursuant to <u>Williams</u>, the court will consider federal law applicable to the issue of Petitioner's

Ground 1. First, Fed. R. Crim. P. 8(a) provides, in regard to joinder of offenses, that an "indictment

or information may charge a defendant in separate counts with 2 or more offenses if the offenses

charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based

on the same act or transaction, or are connected with or constitute parts of a common scheme or

plan." Upon considering the application of Rule 8(a) the Eighth Circuit has held:

Broad interpretation of Fed. R. Crim. P. 8(a) is encouraged for the efficient administration of justice. <u>Haggard v. United States</u>, 369 F.2d 968, 973 (8th Cir.1966) (decided in context of multiple defendants joined in the same indictment). We have recognized that:

Prejudice [as contemplated by Rule 8(a)] may result from a possibility that the jury might use evidence of one crime to infer guilt on the other or that the jury might cumulate the evidence to find guilt if the crimes were considered separately. On the other hand, a defendant does not suffer any undue prejudice by a joint trial if the evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime.

<u>United States v. Davis</u>, 103 F.3d 660, 676 (8th Cir.1996). ...

---

[3]    The Missouri appellate court did further state: "Even though we do not reverse because of improper joinder or denial of severance, it is appropriate to caution prosecutors about the dangers of random joinder of offenses. A prosecutor should think carefully about whether to resist a motion for severance. Otherwise there is danger that retrial will be required." <u>State v. Spencer</u>, 62 S.W.3d 623, 625 (Mo. Ct. App. 2001).

To avoid prejudice, the district court can always grant severance. Haggard, 369 F.2d at 973. *A denial to sever is only reversed if the defendant can show severe prejudice*. United States v. Boyd, 180 F.3d 967, 982 (8th Cir.1999). "Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that [the defendant] would have had in a severed trial." United States v. Koskela, 86 F.3d 122, 126 (8th Cir.1996). [The defendant] contends he was prejudiced because he did not want to testify to the obstruction charge but did want to testify to the sexual charges. That is not enough to require severance. In United States v. Jardan, 552 F.2d 216, 220 (8th Cir.1977), we denied a motion to sever as speculative when the defendant indicated his defense to count one was stronger than for count two. We cited Baker v. United States, 401 F.2d 958 (D.C.Cir.1968), with approval:

> [N]o need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information--regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other--to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying.

Id. at 977 (internal quotations omitted); see also Closs v. Leapley, 18 F.3d 574, 578 (8th Cir.1994) (holding prejudice sufficient to require separate trials where a defendant wants to testify in one but not the other may be established only by a persuasive and detailed showing regarding the testimony that the defendant would give on the one count he wishes severed and the reason why he cannot testify on the other counts). [The defendant] failed to provide the trial judge sufficient information that he had important testimony to give on the sexual abuse offense but a strong need to refrain from testifying on the obstruction count. On this record, we are also unconvinced.

United States v. Little Dog, 398 F.3d 1032, 1037-38 (8th Cir. 2005) (emphasis added).

Also, the Eighth Circuit considered in United States v. Tyndall, 263 F.3d 848 (8th Cir. 2001), an argument by a defendant that it was error for him to be tried in a single trial for two counts of attempted aggravated sexual abuse involving separate victims. As in the matter under consideration,

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the defendant in <u>Tyndall</u> was acquitted on one count and convicted on the other. The Eighth Circuit

held as follows:

> Two offenses may be charged and tried together if they are of the "same or similar character," Fed. R. Crim. P. 8(a), and "[w]here the offenses are similar in character and occurred over a relatively short period of time and the evidence overlaps, joinder is ordinarily appropriate," <u>United States v. McClintic</u>, 570 F.2d 685, 689 (8th Cir.1978).

> [The defendant] contends that none of the prerequisites for joinder was satisfied here, but we disagree. First, the two offenses were "similar" to each other. Rule 8(a) allows joinder not only of crimes of the "same" character but also those of a "similar" character, which means " '[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness.' " <u>United States v. Lindsey</u>, 782 F.2d 116, 117 (8th Cir.1986) (per curiam ) (quoting Webster's New Int'l Dictionary (2d ed.)). The fact that there was a wide age difference between [the defendant's] alleged victims is not, by itself, sufficient to show that the two incidents were dissimilar. The district court noted that both offenses charged were impulsive crimes of opportunity where it was alleged that [the defendant] had managed to isolate his intended victims, and we agree that this is an entirely sufficient basis for concluding that the offenses were "similar."

> The two incidents also occurred over a "relatively" short period of time, <u>see</u> <u>McClintic</u>, 570 F.2d at 689. Although they occurred a year apart, we have upheld the joinder of charges based on events separated by substantially longer periods. <u>See</u>, <u>e.g.</u>, <u>Lindsey</u>, 782 F.2d at 117 (17 months); <u>United States v. Rodgers</u>, 732 F.2d 625, 629 (8th Cir.1984) (20 months).

> Finally, the evidence as to each of these incidents overlaps. Although Federal Rule of Evidence 404(b) generally excludes the admission of evidence of other crimes to show the propensity to commit a particular crime, Congress excepted sexual assault cases from this rule when it enacted Federal Rule of Evidence 413. Rule 413 states that evidence of other sexual assaults by the defendant is admissible in sexual assault cases. [The defendant] contends, however, that Federal Rule of Evidence 403 nonetheless prohibited the introduction of evidence regarding the 1999 incident at his trial because its unfair prejudicial effect outweighed its probative value.

> "In considering evidence offered under Rule[ ] 413 ..., a trial court must still apply Rule 403, though in such a way as 'to allow [Rule 413 its] intended effect.' " <u>United States v. Mound</u>, 149 F.3d 799, 800 (8th Cir.1998) ... . There is in this kind of case a "strong legislative judgment" that evidence of prior sexual crimes "should ordinarily be admissible," <u>LeCompte</u>, 131 F.3d at 769, and we see no reason to hold

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

that such evidence was not admissible here. Although the later incident certainly does not portray [the defendant] in the best light, admission of evidence regarding it was not so unfairly prejudicial as to require exclusion. ... Because the later incident was admissible in a trial on the earlier one, and the other prerequisites for joinder were present, we hold that he district court did not err in joining the two charges for trial.

Id. at 849-50.

Upon considering the issue raised in Petitioner's Ground 1, the Missouri appellate court concluded that the allegations of Counts I and II were sufficiently similar in character because Petitioner allegedly used the same tactics in the crimes alleged in these counts. The court notes, as set forth by the Missouri appellate court, both of Petitioner's alleged victims were adult women, walking alone, who had just left the same barroom; Petitioner discussed drug use with both of the alleged victims; and, after discussing drug use with each of the alleged victims, Petitioner turned to violence. Additionally, the Missouri appellate court considered that the denial of the motion to sever was not an abuse of discretion and did not prejudice Petitioner because the jury was instructed to consider each offense separately. As such, the court finds that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 1 is not contrary to federal law and is a reasonable interpretation of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. See Little Dog, 398 F.3d at 1037-38; Tyndall, 263 F.3d at 849-50. The court finds, therefore, that Petitioner's Ground 1 is without merit and that it should be dismissed.

**Ground 2- The trial court erred in denying Petitioner's motion to suppress evidence regarding blood seized from Petitioner:**

In support of Ground 2 Petitioner argues that his blood was taken pursuant to a warrantless search; that his rights were violated at the hospital because he was in a "drugged state" when the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

blood was taken; and that Stone v. Powell, 428 U.S. 465 (1976), cited by Respondent for the proposition that it bars this court's consideration of the issue raised in Petitioner's Ground 2, is not applicable to the claim he makes in Ground 2.  Doc. 12 at 7-9.

Upon addressing the issue raised by Petitioner in Ground 2, the Missouri appellate court held as follows:

> The defendant argues in his second point that his constitutional rights were violated by an illegal "evidence draw" of blood while he was in the emergency room of a hospital. He was in jail on traffic charges when he suffered chest pains indicating a possible heart attack and was taken in an ambulance to a hospital. The hospital attendants found it necessary to take a blood sample for purposes of diagnosis and treatment. A police officer who had followed him to the hospital knew that the defendant had been charged with the attempted rape of T.M. and suspected that he was involved in the somewhat similar rape of K.D., for which offense no charges had then been filed. The officer asked the attending nurse to provide him with a sample of the defendant's blood for possible use as evidence. The defendant executed a consent form and the evidentiary sample was provided. The blood was used for a DNA profile and matched semen and saliva found on the victim's undergarments to a very high degree of probability.

> The defendant argues that the sample was obtained by coercion, asserting that he was under such stress and pressure that his signing of the consent form could not be found to be voluntary. The issue he raises is purely factual and we see no reason to substitute our judgment for that of the trial court, which is amply supported by evidence.

Spencer, 62 S.W.3d at 626 (emphasis added).

In Stone v. Powell, 428 U.S. 465 (1976), the United States Supreme Court held that a state habeas petitioner may not be granted relief pursuant to § 2254 on the ground that evidence obtained in an allegedly unconstitutional search or seizure was introduced at trial where the petitioner was afforded an opportunity in state proceedings to invoke such a claim in respect to seized evidence. In particular the Court held as follows:

> While courts, of course, must ever be concerned with preserving the integrity

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

of the judicial process, this concern has limited force as a justification for the exclusion of highly probative evidence. The force of this justification becomes minimal where federal habeas corpus relief is sought by a prisoner who previously has been afforded the opportunity for full and fair consideration of his search-and-seizure claim at trial and on direct review. The primary justification for the exclusionary rule then is the deterrence of police conduct that violates Fourth Amendment rights. Post-Mapp Decisions have established that the rule is not a personal constitutional right. It is not calculated to redress the injury to the privacy of the victim of the search or seizure, for any "(r)eparation comes too late." Linkletter v. Walker, 381 U.S. 618, 637, 85 S.Ct. 1731, 1741, 14 L.Ed.2d 601 (1965). Instead, "the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect . . . ." United States v. Calandra, supra, 414 U.S. at 348, 94 S.Ct. at 620. (other citations omitted). ... But despite the broad deterrent purpose of the exclusionary rule, it has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons. As in the case of any remedial device, "the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." United States v. Calandra, supra, 414 U.S. at 348, 94 S.Ct. at 620. ...

We turn now to the specific question presented by these cases. Respondents allege violations of Fourth Amendment rights guaranteed them through the Fourteenth Amendment. The question is whether state prisoners who have been afforded the opportunity for full and fair consideration of their reliance upon the exclusionary rule with respect to seized evidence by the state courts at trial and on direct review may invoke their claim again on federal habeas corpus review. The answer is to be found by weighing the utility of the exclusionary rule against the costs of extending it to collateral review of Fourth Amendment claims.

The costs of applying the exclusionary rule even at trial and on direct review are well known: the focus of the trial, and the attention of the participants therein, are diverted from the ultimate question of guilt or innocence that should be the central concern in a criminal proceeding. Moreover, the physical evidence sought to be excluded is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant. As Mr. Justice Black emphasized in his dissent in Kaufman:

> A claim of illegal search and seizure under the Fourth Amendment is crucially different from many other constitutional rights; ordinarily the evidence seized can in no way have been rendered untrustworthy by the means of its seizure and indeed often this evidence alone establishes beyond virtually any shadow of a doubt that the defendant is guilty. 394 U.S. at 237, 89 S.Ct. at 1079.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Application of the rule thus deflects the truthfinding process and often frees the guilty. The disparity in particular cases between the error committed by the police officer and the windfall afforded a guilty defendant by application of the rule is contrary to the idea of proportionality that is essential to the concept of justice. Thus, although the rule is thought to deter unlawful police activity in part through the nurturing of respect for Fourth Amendment values, if applied indiscriminately it may well have the opposite effect of generating disrespect for the law and administration of justice. These long-recognized costs of the rule persist when a criminal conviction is sought to be overturned on collateral review on the ground that a search-and-seizure claim was erroneously rejected by two or more tiers of state courts.

Evidence obtained by police officers in violation of the Fourth Amendment is excluded at trial in the hope that the frequency of future violations will decrease. Despite the absence of supportive empirical evidence, we have assumed that the immediate effect of exclusion will be to discourage law enforcement officials from violating the Fourth Amendment by removing the incentive to disregard it. More importantly, over the long term, this demonstration that our society attaches serious consequences to violation of constitutional rights is thought to encourage those who formulate law enforcement policies, and the officers who implement them, to incorporate Fourth Amendment ideals into their value system.

We adhere to the view that these considerations support the implementation of the exclusionary rule at trial and its enforcement on direct appeal of state-court convictions. But the additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs. To be sure, each case in which such claim is considered may add marginally to an awareness of the values protected by the Fourth Amendment. There is no reason to believe, however, that the overall educative effect of the exclusionary rule would be appreciably diminished if search-and-seizure claims could not be raised in federal habeas corpus review of state convictions. Nor is there reason to assume that any specific disincentive already created by the risk of exclusion of evidence at trial or the reversal of convictions on direct review would be enhanced if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral proceedings often occurring years after the incarceration of the defendant. The view that the deterrence of Fourth Amendment violations would be furthered rests on the dubious assumption that law enforcement authorities would fear that federal habeas review might reveal flaws in a search or seizure that went undetected at trial and on appeal. Even if one rationally could assume that some additional incremental deterrent effect would be presented in isolated cases, the resulting advance of the legitimate goal of furthering Fourth Amendment rights would be outweighed by the acknowledged costs to other values vital to a rational system

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

of criminal justice.

> In sum, we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

Id. at 485-95.

In the matter under consideration Petitioner filed a pre-trial motion to suppress evidence including his blood. After an evidentiary hearing, the trial court denied Petitioner's motion to suppress. Resp. Ex. B at 9. As such, Petitioner was afforded an opportunity for full and fair litigation of the Fourth Amendment claim he makes in Ground 2. The court finds, therefore, based on Stone that the issue raised by Petitioner in Ground 2 is not cognizable pursuant to § 2254 and that Ground 2 should be dismissed.[4]

**Ground 3 - The trial court erred in admitting State's Exhibit No. 21, a rape kit, because there was no foundation or a chain of custody established regarding the integrity of the evidence:**

In support of Ground 3 Petitioner argues that the trial court erred in admitting the rape kit which included the underpants of K.D. and then permitting the jury to hear testimony regarding a DNA comparison of a specimen found in K.D.'s underpants. Doc. 12 at 9. Petitioner further contends that prosecutors failed to provide "reasonable assurance that [the underpants] had not been tampered with or substituted." Doc. 12 at 9.

---

[4]     To the extent that the Missouri appellate court concluded based on testimony at Petitioner's trial that Petitioner voluntarily provided a blood sample and that he did not do so under coercion, the court notes that upon considering a § 2254 habeas petition the factual findings of the State court are presumed to be correct and are rebutted only by clear and convincing evidence. See n. 1, above.

Upon addressing the issue of Petitioner's Ground 3, the Missouri appellate court held as follows:

> The defendant next complains of the admission into evidence of a "rape kit" assembled at the hospital where K.D. was examined after she was raped. This kit contained the underpants she was wearing at the time she was assaulted, and which had been removed in the course of the rape. She put them in her pocket and turned them over to the nurse who attended her at the hospital. The nurse placed the underpants in the rape kit, which was delivered to the Wentzville Police Department. The garment was removed from the kit by the department's forensic examiner, who cut samples for testing. Some of these samples were forwarded to the laboratory of the Missouri State Highway Patrol, where they were tested for DNA profiling. A picture of the underpants taken while they were in police custody was shown to the victim, who identified them as hers.

> The defendant argues that the evidence does not show a proper chain of custody for the underpants while they were in the possession of the police. He also complains that the underpants had been altered while in police custody, which of course is correct because samples were quite properly cut out for purposes of laboratory analysis.

> The state points to a lack of explicit objection when the rape kit and the photograph of the garment were offered in evidence. Procedural details are important, because if an objection is based on lack of foundation then the prosecutor would have the ability to patch any holes. The defendant's point is so lacking in substance, however, that we elect to review the merits. The victim identified a photograph of the garment as showing the underpants she delivered to the police department. Where there is such an identification, it is not necessary to point out all persons who had custody of the evidence during the entire time it was under police control. State v. Dawson, 985 S.W.2d 941, 953 (Mo. App.1999); State v. Davenport, 924 S.W.2d 6, 9 (Mo.App.1996). The situation differs from a case involving a chemical product or controlled substance which could not be definitively identified through visual examination.

> Inasmuch as the police properly cut samples out of the garment for testing purposes, its appearance was necessarily modified while in police custody. It was entirely appropriate to ask the victim to identify the garment from a photograph. The accuracy of the depiction and of her identification were for the jury. Defendant's Point III is without merit.

Spencer, 62 S.W.3d at 626-27.

In <u>Estelle v. McGuire,</u> 502 U.S. 62 (1991), the United States Supreme Court addressed the extent to which a federal court upon considering a § 2254 petition may consider the state trial court's evidentiary rulings. The Court in <u>Estelle</u> held that "federal habeas corpus relief does not lie for errors of state law" and that "it is not province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Id.</u> at 67-68 (citing <u>Lewis v. Jeffers,</u> 497 U.S. 764, 780 (1990); <u>Pulley v. Harris,</u> 465 U.S. 37, 41 (1984)). The Court further held that "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Id.</u> at 68 (citing 28 U.S.C. § 2241; <u>Rose v. Hodges,</u> 423 U.S. 19, 21 (1975) (per curiam )). Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition. <u>Scott v. Jones,</u> 915 F.2d 1188, 1190-91 (8th Cir. 1990). Indeed, questions concerning the admissibility of evidence are reviewable in federal habeas corpus proceedings only when the alleged error resulted in a trial so fundamentally unfair as to deny the petitioner due process of the law. <u>Evans v. Luebbers,</u> 371 F.3d 438, 443 (8th Cir. 2004) (holding that federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights") (citing <u>Estelle,</u> 502 U.S. at 68), <u>cert. denied,</u> 125 S.Ct. 902 ( Jan. 10, 2005); <u>Rainer v. Department of Corrections,</u> 914 F.2d 1067, 1072 (8th Cir. 1990). <u>See also</u> <u>Sweet v. Delo,</u> 125 F.3d 1144, 1157-58 (8th Cir. 1997) (holding that the exclusion of evidence violates due process if "the asserted error was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the petitioner] of fundamental fairness'") (quoting <u>Logan v. Lockhart,</u> 994 F.2d 1324, 1330 (8th Cir. 1993)); <u>Turner v. Armontrout,</u> 845 F.2d 165, 169 (8th Cir. 1988); <u>Mercer v. Armontrout,</u> 844 F.2d 582, 587 (8th Cir. 1988) (holding that to justify the grant of habeas corpus, the error must be "so

22

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

'gross'... 'conspicuously prejudicial'... or otherwise of such magnitude that it fatally infected the trial and failed to afford [petitioner] the fundamental fairness which is the essence of due process"); Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir.1984) (holding that questions concerning admissibility of evidence are matters of state law and are not reviewable in a federal habeas corpus proceeding unless the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process).

Additionally, under federal law, "the admission of evidence is a matter of discretion for the trial court, and the trial court's determination that evidence is relevant and that its probative value outweighs the danger of unfair prejudice will not be reversed on appeal unless the trial court has abused that discretion." United States v. Macklin, 104 F.3d 1046, 1049 (8th Cir. 1997) (citing United States v. Delpit, 94 F.3d 1134, 1146 (8th Cir. 1996); United States v. Just, 74 F.3d 902, 904 (8th Cir. 1996)).

Also, "[t]he question of whether or not a chain of custody has been shown is one of state law, and state law questions are not very often the basis of constitutional error under habeas review." Id. at 1190 (citing Harrison v. Dahm, 880 F.2d 999, 1001 (8th Cir.1989)).

In regard to the issue raised in Petitioner's Ground 3, the Missouri appellate court considered Petitioner's chain of custody argument and his argument that the undergarment was altered and concluded that these arguments had no factual basis. Further, in regard to Petitioner's chain of custody argument, the court concluded that the chain of custody was sufficiently documented. In regard to Petitioner's argument that the undergarments were altered, the appellate court considered that while Petitioner was correct that they were altered, such alteration was a necessity in order to facilitate laboratory analysis. This court notes that Petitioner has not shown that the State court's

conclusions regarding the admissibility of the rape kit prejudiced him or that its admission fatally affected the trial. As such, Petitioner's Ground 3 in which he contends the rape kit should not have been admitted into evidence does not raise a constitutional issue subject to federal habeas review. See Estelle, 502 U.S. at 68. Moreover, the factual findings of the State court in regard to the chain of custody and the cutting of the undergarments are presumed to be correct and it is not the province of this court to find otherwise; Petitioner has not established that the State court's findings are an unreasonable application of the facts in light of the evidence presented. See n. 1. As such, Petitioner's claim of evidentiary error in Ground 3 is not cognizable pursuant to § 2254.

Additionally, under federal law "in order for evidence to be admissible, a chain of custody must exist that shows a reasonable probability that the evidence has not been changed or altered." United States v. Lothridge, 332 F.3d 502, 504 (8th Cir. 2003) (citing United States v. Cannon, 88 F.3d 1495, 1503 (8th Cir. 1996)). "In making this determination, absent a showing of bad faith, ill will, or proof of tampering, the court operates under a presumption of integrity for the physical evidence." Cannon, 88 F.3d at 1503. To overcome this presumption a defendant must show specifically that the evidence was changed in an important respect. United States v. Pressley, 978 F.2d 1026, 1029 (8th Cir. 1992). Significantly, upon considering whether the rape kit was properly admitted the Missouri appellate court considered the testimony and evidence presented at Petitioner's trial and concluded that the chain of custody existed and that the undergarments were cut for legitimate reasons; the prosecution had adequately accounted for the change in the condition of the undergarments. Significantly, Petitioner has not suggested that the integrity of the sample taken from the undergarments was compromised or that the evidence was altered in an important respect. See Pressley, 978 F.2d at 1029. As such, the court finds, alternatively, that the decision of the Missouri

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

appellate court in regard to the issue raised by Petitioner in Ground 3 is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. See Lothridge, 332 F.3d at 504; Pressley, 978 F.2d at 1029. The court finds, therefore, that Petitioner's Ground 3 is without merit and that it should be dismissed.

**Ground 4 - The trial court erred in admitting into evidence the audiotape of the victim:**

In support of Ground 4 Petitioner argues that the audiotape was hearsay; that no proper foundation was made for the admission of the audiotape; that it improperly enhanced and bolstered K.D.'s testimony; that the audiotape was played for the jury; and that, therefore, admission of the audiotape violated Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendment. Petitioner further argues that K.D. testified that she made the tape for Officer Lappe; that she did not testify that the audiotape was voluntarily made; and that there was no testimony that the operator of the recording device was competent. Petitioner further contends that there was to testimony that changes had not been made in the audiotape and that there was no testimony regarding the authenticity of the recording and the identity of the speaker. Petitioner argues that he was prejudiced by the audiotapes' improper admission and by the jury's hearing the tape twice, as the jury heard the tape "between witnesses" and during deliberation. Doc. 12 at 13-14.

Upon considering the issue raised by Petitioner in Ground 4 the Missouri appellate court held:

> In a fourth point the defendant complains about the prosecution's introduction into evidence and playing before the jury of a taped statement victim K.D. made for the Wentzville police department, describing her rape. He claims illegal bolstering, under such holdings as State v. Seever, 733 S.W.2d 438 (Mo. banc 1987). The point is not well taken. The defense had used a transcript of the tape in attempting to impeach the victim's testimony. The prosecution quite properly offered to play the entire tape, and the court properly permitted this. The victim was available for further

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

cross examination but none was sought.

> Improper bolstering occurs only when there is an attempt to replicate a witness's testimony, without other justification, for the sole apparent purpose of letting the jury hear the same evidence twice. It is quite proper to rehabilitate an impeached witness by showing prior statements consistent with trial testimony. The playing of the tape is not shown to be erroneous.

Spencer, 62 S.W.3d at 617.

The court has addressed above, in regard to Petitioner's Ground 3, the extent to which a federal court upon considering a § 2254 habeas petition may consider state trial court evidentiary rulings. As noted by the Missouri appellate court, Petitioner's counsel used the transcript of the audiotape when cross-examining the victim. Additionally, as noted by the Missouri appellate court, after the prosecution's playing of the audiotape the victim was available for further cross-examination. As such, Petitioner has not demonstrated that he was prejudiced by the jury's hearing the audiotape or that its admission fatally infected his entire trial. See Estelle, 502 U.S. at 68. The court finds, therefore, that the issue presented in Petitioner's Ground 4 is not cognizable pursuant to § 2254 and that, therefore, it should be dismissed.

Moreover, in regard to rehabilitative use of prior consistent statements, federal law provides:

> "[R]ehabilitative use of prior consistent statements is in accord with the principle of completeness promoted by Rule 106." United States v. Andrade, 788 F.2d 521, 533 (8th Cir.1986). ... [I]n appropriate circumstances, prior consistent statements may be admitted for rehabilitative purposes, even where they do not meet the restrictions of Rule 801(d)(1)(B). Prior statements may clarify or amplify the meaning of an impeaching inconsistent statement, and they may "bear on whether, looking at the whole picture, there was any real inconsistency" between the witness's prior statement and the testimony at trial. United States v. Rubin, 609 F.2d 51, 70 (2d Cir.1979) (Friendly, J., concurring), aff'd on other grounds, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981). The extent to which such rehabilitative evidence may be received is generally left to the sound discretion of the trial court. Andrade, 788 F.2d at 533.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

United States v. Kenyon, 397 F.3d 1071, 1081 (8th Cir.2005).

Upon considering the issue of Petitioner's Ground 4 the Missouri appellate court held that it was proper for the trial court to permit the jury to hear the audiotape after the defense attempted to impeach K.D. with the transcript of the audiotape. Therefore, the court finds, alternatively, that the Missouri appellate court's finding in regard to the issue raised in Petitioner's Ground 4 is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. See id. As such, the court finds, alternatively, that the issue raised in Petitioner's Ground 4 is without merit and that it should be dismissed.

## Ground 5 - The trial court erred in imposing a longer sentence than recommended by the State:

In support of Ground 5 Petitioner argues that prior to trial the State recommended twenty years for both counts with which Petitioner was charged; that Petitioner was acquitted of the charge of attempted rape and convicted of forcible rape; and that the court sentenced Petitioner to a more severe sentence than he would have received had he been convicted of both counts and had he been sentenced as recommended by the State. Doc. 12 at 15-16.

Upon addressing the issue raised in Petitioner's Ground 5, the Missouri appellate court held:

In his sole point relied on, Movant argues that the motion court clearly erred in denying him an evidentiary hearing on his claim that the sentence imposed violated the United States and Missouri Constitutions. He alleges that, when sentencing him to twenty-five years' imprisonment, the trial court knew he had rejected the State's pretrial plea offer to recommend a twenty year sentence on each count. Movant further argues the trial court chose to impose a stiffer sentence than the State's pretrial sentencing recommendation in order to punish him for exercising his constitutional right to trial.

...

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Section 557.036.1, RSMo 2000, instructs the trial court imposing sentence to consider "all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant .. . ." The trial court, however, cannot use the sentencing process to punish a defendant for exercising his right to receive a full and fair trial. State v. Vaughan, 940 S.W.2d 26, 29 (Mo. App., S.D. 1997). A defendant's choice to exercise that right must have no bearing on the sentence imposed. Id. "[A] practice which discourages the Fifth Amendment right not to plead guilty, which deters the Sixth Amendment right to demand a jury trial and which chills the assertion of these constitutional rights by penalizing those to choose to exercise them is patently unconstitutional." Id. We presume that the trial court's experience and expertise enable the judge to consider appropriate factors and to disregard improper matter when determining the extent or duration of a sentence. Id. at 30.

Movant's factual allegations fail to rebut the presumption. While he alleges the court punished him for exercising his constitutional right to a trial, we find this allegation conclusory and unsupported by any allegations of fact. He offers no factual allegations to show that the trial court gave him a stiffer sentence to punish him for going to trial. Movant has not cited any comments made on the record or alleged the trial court made remarks outside the record that would support his conclusion. See e.g., Vickers v. State, 17 S.W.3d 632, 636 (Mo. App.,S.D. 2000) (the trial court found the defendant received a longer sentence than his co-defendant did "because he rejected the State's initial plea offers and chose to proceed to trial."). Nor has he cited or alleged any trial court remarks that give the appearance it factored Movant's demand for a jury trial into its sentencing decision. See, e.g., State v. Wright, 998 S.W.2d 78, 83-84 (Mo. App., W.D. 1999) (sentencing court stated it factored and considered that the defendant aggravated the victimization of two young girls by requiring them to come in and testify). He has not even alleged the sentencing court failed to exercise the judicial discretion on a case-by-case basis as required by section 557.036.1. See, e.g., Thurston v. State, 791 S.W.2d 893, 896-897 (Mo. App., E.D. 1990) (the trial court had a pattern of imposing the maximum sentence on all prior offenders who demand a jury trial.) Instead, Movant has based his conclusion of retaliatory sentencing entirely upon an allegation that the trial court knew he had rejected the State's pretrial offer and sentenced him to an amount greater than that plea offer.

Mere knowledge of a pretrial plea offer, however, is insufficient to support Movant's claims for post-conviction relief. State v. Davis, 582 S.W.2d 342, 343-344 (Mo.App., E.D. 1979); Tippett v. State, 605 S.W.2d 217, 218-19 (Mo. App., E.D. 1980). In both Davis and Tippett, the trial court made statements on the record that were more extensive than the factual allegations Movant raises here. In those cases, not only did the trial court know about the State's pretrial sentencing recommendation, the court expressly stated it would have accepted that

recommendation had the defendant plead guilty instead of going to trial. <u>Davis</u>, 582 S.W.2d at 343; <u>Tippett</u>, 605 S.W.2d at 218. Those trial courts then imposed stiffer sentences than the State's plea offers. On appeal, this Court affirmed both sentences. We held, "'without more, a judge's willingness to accept a bargained for disposition does not establish that his subsequent refusal to grant leniency after trial constituted denial of due process by punishing defendant for exercising his right to trial.'" <u>Tippett</u>, 605 S.W.2d at 619 quoting <u>Davis</u>, 582 S.W.2d at 344.

       We find Movant failed to allege facts warranting relief. Moreover, as in <u>Davis</u> and <u>Tippett</u>, the trial court here expressly rebutted Movant's conclusion that it was punishing him for rejecting the State's pretrial plea offer. Specifically, the judge stated, "I am not going to let [my knowledge of the State's pretrial sentencing recommendation] influence me in making my decision." We find no clear error in denying Movant's Rule 29.15 motion without an evidentiary hearing. Point denied.

Resp. Ex. I at 2-5.

       Pursuant to <u>Williams</u> the court will consider federal law applicable to the issue raised in Petitioner's Ground 5. There is "constitutional mandate that a defendant may not be punished for exercising his constitutional right to a trial." <u>United States v. Thompson</u>, 51 F.3d 122, 126 (8th Cir. 1995) (citing <u>North Carolina v. Pearce</u>, 395 U.S. 711, 725 (1969)). The Eighth Circuit has held as follows:

       A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal. ... [I]n <u>Alabama v. Smith</u>, 490 U.S. at 794, 109 S.Ct. at 2201, the Supreme Court held "that ... [*the defendant*] *bears the burden of proving* that actual *judicial vindictiveness motivated the* ten-year *sentence he received after trial*. <u>See</u> <u>Wasman v. United States</u>, 468 U.S. 559, 567-68, 104 S.Ct. 3217, 3222-23, 82 L.Ed.2d 424 (1984).

<u>Waring v. Delo</u>, 7 F.3d 753, 758 (8th Cir. 1993) (emphasis added).

       In <u>Waring</u>, the Eighth Circuit acknowledged that under federal law a harsher sentence after trial may be justified because:

       [T]he sentencing judge has considerably more relevant sentencing information after trial than was available when the defendant pleaded guilty. During a trial, "the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

judge may gather a fuller appreciation of the nature and extent of the crimes charged" and gain "insights into [the defendant's] moral character and suitability for rehabilitation." In addition, "after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present." 490 U.S. at 801, 109 S.Ct. at 2206. Therefore, it is not reasonable to presume that a longer sentence imposed after trial was motivated by unconstitutional vindictiveness.

Id. at 758.

Additionally, under federal law a harsher sentence after trial may be justified as a result of a trial judge's consideration of the State's trial evidence and because of a judge's gaining insight into a defendant's character. See id.

The court notes that in the matter under consideration Petitioner does not suggest evidence to support his claim that the trial court penalized him for proceeding to trial. Rather, Petitioner merely asserts that because the trial court knew he had turned down the plea offer the trial court must have been punishing him for turning it down. The Missouri appellate court considered the issue raised in Petitioner's Ground 5 in terms of the constitutional rights not to plead guilty and to exercise the right to trial. The Missouri appellate court held that the exercise of these rights should have no bearing on the sentence imposed. As such, the court finds that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 5 is not contrary to federal law and that it is a reasonable application of federal law. See Pearce, 395 U.S. at 725; Thompson, 51 F.3d at 126; Waring, 7 F.3d at 758. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that Petitioner's Ground 5 is without merit and that it should be dismissed.

**V.**
**CONCLUSION**

For the reasons fully set forth above, the court finds that Petitioner's Grounds 1-5 are without

30

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

merit. The court alternatively finds that the issues raised in Petitioner's Grounds 2, 3, and 4 are not cognizable pursuant to § 2254. As such, the court finds that Petitioner's § 2254 Petition should be dismissed in its entirety. The undersigned also finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DISMISSED**; [1]

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.3d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 25th  day of  July, 2005.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com